REXACH RACING & SPORTING CORPORATION, Plaintiff and Appellee, *v.* INSULAR RACING COMMISSION, Defendant and Appellant; and LAS MONJAS RACING CORPORATION, Intervener.

No. 8272. Argued February 20, 1942.—Decided April 30, 1942.

*Diego O. Marrero* for appellant. *Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes,* for appellee. *Leopoldo Feliú* for intervener.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On May 23, 1939, Rexach Racing & Sporting Corporation, plaintiff herein, which operates a race track owned by it, within the municipal district of San Juan, applied to the district court for a permanent writ of injunction to restrain the Insular Racing Commission, defendant herein, from put-

ting into effect an order issued by it on May 15, 1939, cancelling the dates selected by plaintiff to hold subscription fund drawings and from interfering with the preparation and distribution of tickets in connection with the subscription fund drawing already advertised to take place on June 4, 1939.

The plaintiff also requested that, pending a determination of the suit, a preliminary writ be issued upon the furnishing of a bond, which writ was accordingly issued. The defendant moved to quash the same and filed an answer to the complaint. Las Monjas Racing Corporation, which is another corporation that operates in San Juan the race track known as "Las Monjas," intervened, and the case was, on May 29, 1939, finally submitted to the court for decision.

A judgment was rendered on the 6th of the following June, sustaining the complaint and, consequently, ordering the issuance of the permanent writ of injunction sought, with costs but without including attorney's fees.

Feeling aggrieved by that decision, the defendant took an appeal, which was heard on the 20th of last February.

██ Is the Insular Racing Commission empowered to set dates to the different race tracks operating in San Juan for holding subscription fund drawings? That is the essential question to be determined. The district court decided it in the negative when finding for the plaintiff in the particular case taken to said court. The defendant maintains that such a decision is erroneous.

As gathered from the long and confused allegations of the parties, the concrete case, to which we have just referred, is as follows:

About the year 1939 the Insular Racing Commission authorized the holding of races in three race tracks, to wit: "Las Casas", "Las Monjas," and "Quintana"; but as no races were being held in the latter, it authorized the holding of subscription fund drawings in the other two tracks on

the following dates: May 7 and 21, June 4 and 18, and July 2, 16, and 30 in "Las Casas", and May 17 and 31, June 14, and July 4 in "Las Monjas".

At this stage, the Quintana race track which, according to the commission, had started holding races on May 7, applied for the setting of days for its subscription fund drawings; and the commission proceeded to do so on May 15, 1939, by means of the following resolution:

"The Racing Commision having fixed on March 23, 1939, days for the holding of various drawings of lots for the subscription fund when the Quintana Racing Track was not in operation, and bearing in mind that during the last two weeks Las Monjas Racing Corporation has failed to hold races in its race track and several days have been assigned to it for the holding of subscription fund drawings, the commission decides to cancel, and does hereby cancel, all the dates fixed for drawing lots, except June 4, 1939, when the Quintana Racing Track shall be allowed to hold a drawing inasmuch as said corporation has submitted the tickets to be used; and, further, it hereby denies the request of the Rexach Racing & Sporting Corporation to hold on said day, June 4, 1939, another subscription fund drawing because of the failure to submit so far the form of ticket to be used, as required by the regulations in force, and because said regulations forbid the holding of two subscription fund drawings on the same dav."

Upon refusal by the commission to set aside its order, the plaintiff resorted to the district court.

The law governing this case is Act No. 17 of 1935 (Laws of 1935, Spec. Sess., p. 92) which amended the Racing Act. Section 5 thereof, as amended, provides in its pertinent part as follows:

"Section 5.—The Insular Racing Commission is hereby empowered to regulate all matters concerning the sport of racing, and for the purpose it shall have power to prescribe the rules and conditions by which the holding of horse races in Puerto Rico is to be governed; to regulate all matters connected with the manner in which bets are to be made in the *bancas alemanas,* pools, subscription funds, mutuels, or any other system of betting; by regulation to prescribe the

requirements that should be fulfilled by persons engaged in any activity connected with horse racing and those wishing to obtain, and who obtain, from the Commission, licenses to operate racetracks and licenses as horse owners, jockeys, trainers, or stablemen; Provided, that the Insular Racing Commission may, when it so deems it advisable for the good of the sport, deny the application for any of these licenses; *Provided, further,* that in cases of renewal of licenses of the racetracks now in operation, the Insular Racing Commission shall renew said licenses on application of the natural or artificial person operating the race-track, provided that said natural or artificial persons and their respective race-tracks fulfill such conditions as the Insular Racing Commission may by regulation require."

Section 21 was also amended (p. 100), as follows:

"Section 21.—The system of betting known in Puerto Rico as *pool* and the betting in the *bancas alemanas,* subscription funds, and mutuels, as well as any other system of betting, may be established only for the days on which horse races are held, and in connection with said races, within the race-tracks authorized by the Insular Racing Commision, and may be operated only by the natural or artificial persons exploiting the race-tracks in operation."

Section 23½, added to said act (p. 108), prescribes:

"Section 23½.—In order duly to guarantee the money bet in the pool, subscription funds, *bancas alemanas,* mutuels, and any other system of betting, the Insular Racing Commission shall require such persons as are responsible for the management and operation of the funds of such betting systems in the race-tracks in operation, to furnish bonds, and for this purpose, it may determine the amount, kind, and duration of such bonds."

The trial court reasoned its conclusion as follows:

"The Racing Commission, in accordance with §5, is empowered to prescribe rules and conditions whereby the holding of horse races in Puerto Rico is to be governed; but if we construe §5 in connection with §§21 and 23½, *supra,* we must reach the conclusion that the bets are subordinated to the holding of races, that is, every time there is a race, bets may be made according to the different systems enumerated, including the subscription fund drawings, and may be worked by natural or artificial persons operating the race tracks, and it is the duty of the Racing Commission to regulate the

manner in which they are carried out and to require the furnishing of sufficient bonds to duly secure the amount of the bets. If the Racing Commission were empowered, under §5, to fix the dates on which the betting system known as subscription fund drawings shall be operated, it might also determine the dates when the pool or the bancas shall be played in a certain race track, even though races may be held therein. How could then the discounts provided by §29 of the act be made, and how could the race tracks, or even the Racing Commission itself, subsist? . . .

"Already our Supreme Court, in *P. R. Racing Corp.* v. *Ins. Racing Comm.*, 38 P.R.R. 251, when reviewing the history of the Puerto Rican legislation on horse racing and when construing §5 of the 1927 Act (Act No. 40, Laws of 1927, p. 206), in regard to the power vested in the Racing Commission to regulate the holding of horse races, has held that the same did not include the power to fix turns or the days for holding races, as was authorized by the former Act of 1925 (Act No. 21 of 1925, Laws of 1925, p. 146). If the Legislature had meant to confer on the Racing Commission the power to restrict the number of days when betting systems could be operated in the race tracks, including therein the subscription fund drawings, it would have expressly so stated and would not have used the phrase 'to regulate all matters connected with the manner in which bets are to be made, etc.' To regulate 'the manner' of doing a certain thing does not include a determination of when such thing is to be done, especially if the operation of the bets is placed in the hands of the race tracks authorized to hold races."

The reasoning contained in the lengthy brief of the appellant fails to convince us that the view maintained by the trial court is erroneous.

There is no doubt that the commission was established in order to regulate the so-called horse-racing sport in this island. Its powers, however, although very broad, derive from the law, and the letter of the law must not be disregarded upon the pretext of complying with its spirit.

Its power to regulate the games covers, under the express terms of the statute, "all matters connected with the manner" of holding them, and in order to consider the fixing of the dates as comprised within such grant it would be necessary to strain the plain meaning of the letter of the law.

We really think that the intervention of the Racing Commission in fixing certain days for the holding of the subscription fund drawings might be beneficial to the public interest and tend to secure an equitable distribution of the business among all the entities engaged in the same; but, under the present wording of the statute, such intervention may be affected only with the assent of said entities through persuasion and not mandatorily.

The judgment appealed from must be affirmed.

Mr. Justice Todd, Jr., did not participate herein.